IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DESTINY CANO,** | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:19-cv-1296-ESC |
| | § | |
| **HARLANDALE INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| Defendant. | § | |

## RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Destiny Cano ("Plaintiff" herein), and files this her *Response To The Harlandale Independent School District's* (the "School District") *Rule 12(b)(6) Motion To Dismiss* and proceeds as follows:

### I. INTRODUCTION AND BRIEF RESPONSE

1. In January of 2017 Destiny Cano was an exceptional student and during her final semesters in the Harlandale High School. She was readying herself for admission to college. She was also an excellent athlete and on the School Dance Team. Unfortunately, but not surprisingly the athletic programs for female students and athletes were not provided the same supports from the School District as those provided her male peers. This institutional bias put her and her female peers at risk, so much so that on one occasion Destiny was seriously injured at school when practicing for participation in a dance performance. As such, she brings forth claims pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, ("Title IX") and pursuant to the pursuant to the United

        States Constitution which may be adjudicated pursuant to 42 U.S.C. Section 1983.

2. At that time she became a student with a disability and as such has likewise brought forth claims against the School District as contemplated by the *Americans With Disabilities Act,* 42 U.S.C. §12131 et seq., ("ADA") and *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794 ("Rehab Act") for failing to provide her necessary accommodations and modifications so could access educational and non-educational services to the same extent as her non-disabled peers.

3. The School District brings forth a 12(b)(6) Motion to Dismiss on the Title IX and Constitutional claims. Destiny responds accordingly.

## II. STANDARD OF REVIEW

A. General Standard of Review In A 12(b)(6) Motion

4. At this stage of the proceedings they must merely plead enough facts to state a claim that is plausible on its face, Bell Atlantis v. Twombly, 550 U.S. 544, 570 (2007), not prove their case. Further, Plaintiff's complaint must be liberally construed and allegations therein must be taken as true. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 2003). In addition, the court must indulge all inferences in Plaintiff's favor and against the Defendant(s). Collins v. Morgan Stanley Dean Whitter, 224 F3d 496, 498-499 (5th Cir. 2000).

5. Importantly, such motions are viewed with disfavor and are rarely granted. Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). Rather, liberal discovery rules and summary judgment motions, should be used to define disputed facts and issues and to

dispose of unmeritorious claims. <u>Furstenfeld v. Rogers,</u> No. 03-02 CV 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002).

B.   Standards Of Review For Discrimination Cases

6.   In <u>Roger Reeves v. Sanderson Plumbing Products, Inc</u>., 530 U.S. 133, 14; 120 S. Ct. 2097; 147 L.Ed 2d 105 (2000) the Court noted that is particularly crucial in looking to the facts and the reasonable inferences from those facts in discrimination cases "as the question facing triers of fact in discrimination cases is both sensitive and difficult." Further, lower Courts should not treat discrimination cases with more scrutiny than other cases dealing with questions of fact, *citing* <u>St. Mary's Honor Center v. Hicks,</u> 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993). This public policy is an important consideration when dealing with a case where a student has been victimized.

7.   The Supreme Court has noted in a Title IX case that "[t]he statute is broadly worded." <u>Jackson v. Birmingham Bd. of Educ.,</u> 544 U.S. 167, 179 (2005). Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" <u>North Haven Bd. of Educ. v. Bell</u>, 456 U.S. 512, 521 (1982); *quoting* <u>United States v. Price,</u> 383 U.S. 787, 801 (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." <u>Jackson</u>, 544 U.S. at 175 (internal quotations omitted.). Further, "Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also to provide individual citizens effective protection against those practices." <u>Jackson</u>, 544 U.S. at 180. "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to

proscribe." Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992).

Moreover:

"Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also* Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

8. Plaintiff's *First Amended Complaint* clearly and easily meets the standards of Rules 8, 12(b)(6) as contemplated by Twombly relative to his claims based upon Section 504, the ADA and Title IX. The District's *Motion For Dismiss* should be denied, in total and in the alternative, in part.

C.  Right To Amend

9. Nevertheless, if the Court believes that Plaintiff has failed to state a claim upon which relief can be granted, then before granting the motion, Plaintiff should be given the opportunity to replead. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [the 5th Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim ..."].

### III. FACTUAL BACKGROUND

A.  ABOUT DESTINY CANO

10. Destiny was born on July 20, 1999. While at Harlandale H.S. she was on the dance team and Jayme Munoz was lead coach. In the weeks prior to January 17, 2017, Destiny and

teammates practiced for a performance at an upcoming basketball game. About a week prior the Coach introduced a stunt called "the trick" which is very dangerous. In fact, just two years earlier another student suffered a concussion. In fact, this stunt went against the prescribed rules for dance competitions and would be considered "illegal" in a dance competition. No one on the team could successfully execute the stunt, yet Destiny was given the charge to execute the stunt. [DE# 26, ¶15-17].

11. Prior to the incident, Destiny was only able to practice the stunt 5 times and was only able to land steady on her feet once even though it was well-known by the teacher and school nurse to be excessively dangerous. Fortunately during early practice sessions the team was able to use dance mats so injuries were limited though on one attempt Destiny landed on her back and on an other, fell on her head. Importantly Male students at the School participating in football, or baseball or wrestling have the advantage of having full protective gear and equipment provided to them both for practices and games. Destiny and other female student-athletes did not have such a benefit. Moreover, male students had a number of coaches and trainers skilled in providing emergency medical and nursing interventions during athletic events. Destiny and other female student-athletes did not have such a benefit. The male football team was not permitted to use or even practice any methodology, like spearing that was excessively dangerous. Destiny and other female student-athletes on the dance team had no such equal benefit. [DE# 26, ¶18-23].

**C.    INCIDENT IN QUESTION**

12. On or about January 17, 2017, Destiny was directed by dance coach Jayme Munoz to engage in the dangerous stunt. She and other team members asked to put the mats down but Munoz

      refused. In the past when students could not pull off a stunt, she would threaten the entire team with conditioning or extra laps if anyone complained. At approximately 9:00 a.m. Destiny engaged in the stunt, fell and severely injured her head. She rolled around holding her head in pain and crying. Munoz asked Destiny if she could move who replied she could not. Munoz asked Destiny if she could get up who replied she could not. Rather than do anything at all, Munoz left Destiny on the dance floor for about twenty minutes before finally another student helped her to the trainer. Coach Munoz continued to sit in her office and do nothing. Destiny had to make multiple stops on the way to the trainer, because walking made her dizzy. [DE# 26, ¶24-26].

13. Destiny and other students were met by a teacher who directed them to the nurse's office, which is located on the opposite side of the school. Noticing the difficulty with which Destiny walked, the same teacher decided to help walk her to the nurse's office. On their way to the nurses office they passed by many teachers and administrators who inquired about what was wrong, yet none offered to help. When she finally arrived at the nurse's office, the nurse gave her more ice but Destiny told the nurse that the ice was not helping anything. The school nurse decided to call someone to pick up Destiny. On the third attempt, the nurse was able to make contact with Destiny's brother. By the time Destiny's brother was contacted, her head was pounding and her neck was in much more pain than before. Still, Destiny was not evaluated for a concussion or was EMS called. [DE# 26, ¶27, 28].

    **D.**    **AFTER THE INCIDENT**

14. Destiny's mother took her an urgent care doctor who quickly referred them to the

      Emergency Room at a hospital. While in transport Destiny was immediately put in a cervical collar. She was diagnosed with spinal cervical strain, a concussion, neck pain, neck sprain and post-concussion syndrome and swelling. A CT scan showed soft tissue swelling. Additional tests were performed. Mother was told that the failure to get immediate medical care caused Destiny's concussion to heal more slowly than if she would have received immediate care. Over time, Destiny has been seen numerous times by her physician, a neurosurgeon and again back to the emergency room a number of times. As a result of the injury, Destiny has to participate in physical therapy and was prescribed numerous medications for pain. Destiny and her family incurred significant medical expenses, which they still have, due to this incident. One that could have been prevented if the School District had properly trained their employees regarding excessively dangerous exercise routines. The severity of her injuries would likewise have been mitigated if staff had provided emergency interventions in a timely manner. [DE# 26, ¶29, 30].

15. Due to School District's failure to remedy the effects of the injuries and trauma Destiny experienced, it has effected her ability to study, concentrate, retain and understand information so as to attend and benefit from college level classes and pursue further vocational and educational aspirations. [DE# 26, ¶29, 32].

### VI. PLAINTIFF'S TITLE IX CLAIM IS PLAUSIBLE

16. Plaintiff incorporates by reference the paragraphs above, as if fully set forth herein, and likewise, each succeeding paragraph below, incorporates by reference the one above it.

17. The School District Defendant has also argued that Destiny has not pled sufficient facts to satisfy the criteria that he has a viable claim pursuant to Title IX (DE# 30, ¶4-9). They are

mistaken.

A. THE PLAIN LANGUAGE OF THE STATUTE SUPPORTS CANO'S POSITION SHE WAS DENIED THE BENEFITS OF A PUBLIC EDUCATION BASED UPON HER SEX

18. The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688. It is commonly known as "Title IX" and states (in part) that:

> "No person in the United States shall, on the basis of gender, be excluded from participation in, be *denied the benefits of*, or be *subjected to discrimination* (emphasis added) under any education program or activity receiving federal financial assistance."

19. When the language of a statute is plain and does not lead to absurd or impracticable results, there is no occasion or excuse for judicial construction; the language must then be accepted by the courts as the sole evidence of the ultimate legislative intent, and the courts have no function but to apply and enforce the statute accordingly. Statutory words are presumed, unless the contrary appears, to be used in their ordinary sense, with the meaning commonly attributed to them. Caminetti v. U.S., 242 U.S. 470 (1917); *see also* Bostock v. Clayton County, 2020 U.S. LEXIS 3252 (June 15, 2020). Moreover, the term *denied the benefits of* is not ambiguous nor did it have a different meaning in 1972 when it passed through Congress. *See* Bostock at *20. In short, its meaning is quite clear, as are the facts in this case– it is uncontroverted that Destiny has provided plausible facts, at this stage of the litigation, to evidence she was denied a public benefit because she was treated her differently than boys and also failed to consider her sex and gender.

B. RECENT GUIDANCE FROM THE U.S. DEPARTMENT OF EDUCATION'S *OFFICE OF CIVIL RIGHTS* SUPPORTS A.I.'S POSITION SHE WAS DENIED BENEFITS OF A PUBLIC EDUCATION BASED UPON SEX

20. Destiny's position is further reinforced by a recent directive provided by a "Letter of Impending Enforcement Action," written by the U.S. Department of Education *Office of Civil Rights* ("OCR").  Here the OCR addressed the very important hormonal, metabolic and physical differences tethered to the genetic differences between boys and girl, in physical education activities.  Moreover, the failure to consider these differences violated Title IX as it denied genetically born females *the benefits* they otherwise deserved in public educational and athletic programs.  As the Panel well-knows such directives from OCR are given significant weight  Riegel v. Medtronic, Inc., 128 S. Ct. 999 (2008) [agency's reading of its own rule is entitled to substantial deference].  Further, "... interpretations contained in formats such as opinion letters are also "entitled to respect," *see* in Skidmore v. Swift & Co., 323 U. S. 134, 140 (1944), where such interpretations have the "power to persuade." Christensen v. Harris County, 529 U.S. 576, 587 (2000).

C. THE DISTRICT FAILED TO ACCOMMODATE CANO BASED UPON HE SEX

21. In summary, the governing principle is that male and female athletes should receive equivalent treatment, benefits, and opportunities. *See* McCormick and Geldwert v. The School District Of Mamaronek, 370 F3d 275, (2nd Cir. 2004); *see* 44 Fed. Reg. at 71,413 [general principles apply to club, intramural, and interscholastic athletic programs, which are also covered by the regulation]; *see also* 34 C.F.R. § 106.41 [regulations do not distinguish between collegiate and scholastic sports, but rather provides a school must provide equal opportunities to members of both sexes].  Id. at 71,414; *see* Boucher v. Syracuse University, 164 F.3d 113 (2d Cir.1999)[claims a school provides unequal benefits is generally referred to as "equal treatment" claims].

22. The Fifth Circuit as well as others, call it an "accommodation claim" rather than an equal treatment claim. Pederson v. Louisiana State University, 213 F.3d 858, 877-82 (5th Cir.2000)[university violated Title IX by failing to effectively accommodate interests and abilities of female athletes]. Here the difference in nomenclature is of no matter as Destiny provides plausible evidence the District failed to accommodate her unique needs as a female student-athlete leading to the injuries noted above. Here Destiny has again provided plausible and uncontroverted facts that the Harlandale Independent School District provided male students certain protections that were not afforded female student-athletes in the Dance Team Program, and violated Title IX thereby.

### IX.   CANO'S CONSTITUTIONAL CLAIMS ARE PLAUSIBLE

A.   DESTINY HAS A CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

23. It is well-settled that Destiny has a constitutional right to bodily integrity at school. Fee v. Herndon, 900 F.2d 804, 808 (5th Cir. 1990); Jefferson v. Yseleta Independent School District, 817 F.2d 303, 305 (5th Cir. 1987); Doe v. Taylor Independent School District, 15 F.3d 443, 451 (5th Cir. 1994) [now well-settled, that a student has a constitutional right to be free from injury by a school official]. Moreover, she has a has a constitutional right to "safe conditions" at school. Vickey M. & Darin M. a/n/f A.J.M. v. Northeaster Educational Intermediate Unit, et al., 3:05-cv-1898 (M.D. Pa., September 16, 2009).

24. As such, a School District may be held liable for violation of a person's constitutional rights pursuant to the Due Process Clause of the 14th Amendment, when the District has a long standing custom or practice that is not written or formally adopted, but is a pervasive and long-standing practice having the force of law. Sharp v. City of Houston, 164 F.3d 923,

936 (5th Cir. 1999).

B.     CANO WAS INJURED BY A SCHOOL BOARD POLICY, PRACTICE & CUSTOM

25. Plaintiff alleges that the School Board has actual, if not constructive knowledge of the above noted custom and practice of staff not calling for emergency medical services directly when a student is in the middle of an obvious medical emergency. In fact, Destiny finds further factual support for this allegation in that this Counsel has filed a similar lawsuit on behalf of other students who were also not provided necessary emergency medical care in a timely manner, *see* Civil Action No. 1:18-cv-137, Estate of I.C.D. v. Beaumont Independent School District, In The Eastern District of Texas- Beaumont Division; *see also* Civil Action 1:20-cv-087-MAC for Estate of M.L. v. Spring Independent School District; Estate of T.J. v. Aldine Independent School District and C.C. v. Pflugerville Independent School District all in the Southern District of Texas- Houston Division. In fact in that case, because of the number of Plaintiffs and different school district's, there are not just allegations of violations of the 14th Amendment but of civil conspiracy, pursuant to 42 U.S.C. Section 1985, as well.

26. Here Cano reasonably believes that the District had such a similar practice and custom because they too do not want to spend the money to pay for a student to receive emergency medical services at school. Moreover, they do want to worry other students and their families, as if and when EMS would show up at school it let everyone in the community know of the injury Destiny experienced. Of course, such expenditures also have to be reported to both the School Board and later to the Texas Education Agency.

---

1. This case was dismissed for limitations purposes.

Response To 12(b)(6) Motion To Dismiss                      11

27. Taken together, there is strong disincentive for staff to call EMS when necessary or to pay for hospital care when necessary, as they know of such disincentives. Surely, if the acts and omissions of the Coach, a number of teachers and most importantly the school nurse to contact EMS, in light of observing a student who complains of head injuries, can't walk and is dizzy, doesn't show "custom or practice" than maybe nothing does.

28. Plaintiffs have provided sufficient facts, and the reasonable inferences that flow from such facts, that Destiny has a plausible claim her constitutional rights were violated by the District's custom and practice to disregard the provision of emergency medical care to her. Their *Motion To Dismiss* should be denied because she has a plausible claim, certainly at this stage of the litigation, that her constitutional rights have been violated by the District.

29. Plaintiffs point out the obvious, that not training staff adequately in dealing with medical emergencies for significantly disabled training, is an occurrence where such training should have been obvious.  Pembaur v. City of Cincinnati, 475 U.S. 469, 482-483 (1989).

C.  CANO'S FAILURE TO TRAIN CLAIM IS PLAUSIBLE

30. In addition to the above, in Canton vs Harris, 489 U.S. 378 (1989) the Court determined that a municipality could also be held liable under the Due Process Clause of the 14th Amendment to the Constitution where there was an obvious need for a citizen to receive medical care, and the City failed to train staff in how to address matters when there was a significant medical emergency. Destiny makes almost the exact same argument here.

31. The District is deemed to have been deliberately indifferent to Destiny's constitutional rights, which is "knowledge that harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Canton at 389 [municipality liable when need for

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need]. The Court further reasoned that in such an event, the failure to provide proper training to staff may fairly be said to represent a policy or custom for which the city (and in this case the School District) may be held liable, if such failure actually causes injury, as it did in this case. *See also* Doe v. Taylor, 15 F.3d 443, 452 (5th Cir. 1994). As she has provided sufficient facts, and the reasonable inferences that flow from such facts, she has a plausible claim his constitutional rights were violated by the District's failure to train staff on how to deal with medical emergencies.

D.   CANO'S EQUAL PROTECTION CLAIM IS PLAUSIBLE

32.   While public education is not a fundamental right under the Constitution, San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973), the Equal Protection Clause of the 14th Amendment to the United States Constitution notes that a public school system is developed by the state, it may not deny a student "equal access" to a school district program. Phyler v. Doe, 457 U.S. 202 (1982). In the instant case, Destiny was denied equal access to district programs, including nursing care services, including the right to a safe and non-hostile environment. *See* Vickey M. [student has constitutional right to "safe conditions"]. Moreover, she argued that male students were provide significantly more safety measures than she was provided, giving added emphasis and support to her *Equal Protection* claim.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that the Court deny the

Defendant's *12(b)(6) Motion To Dismiss* in total or in part, and in addition and in the alternative, give leave to amend the complaint and for such further relief as this Court may deem just and proper in law and equity or both.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel, Attorney
State Bar No.: 00783829
marty@cirkielaw.com [Email]

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

       I hereby certify a true and correct copy of the above and foregoing document has been mailed to the Court via regular United States Mail and later served upon Defendant via both the court's Notice of Electronic Filing system, by email and by U.S. mail on this the 7th day of July 2020.

Ms. Katie Elizabeth Payne
State Bar No. 24071347
Federal ID No. 1766856
kpayne@wabsa.com [Email]
ATTORNEY IN CHARGE

Mr. D. Craig Wood
State Bar No. 21888700
Federal ID No. 979301
cwood@wabsa.com [Email]

Walsh, Gallegos, Trevino, Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
(210) 979-6633 [Telephone]
(210) 979-7024 [Facsimile]
ATTORNEYS FOR DEFENDANT SCHOOL DISTRICT

                                          /s/ Martin J. Cirkiel
                                          Martin J. Cirkiel