IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DESTINY CANO,                          §
                                       §
            *Plaintiff,*                §                SA-19-CV-01296-ESC
                                       §
vs.                                    §
                                       §
HARLANDALE INDEPENDENT                  §
SCHOOL DISTRICT,                       §
                                       §
            *Defendant.*                §

## ORDER

Before the Court in the above-styled cause of action is Defendant Harlandale Independent School District's Rule 12(b)(6) Motion to Dismiss in Part Plaintiff's First Amended Complaint [#30]. The Court has jurisdiction to issue this Order because all parties have consented to the jurisdiction of a United States Magistrate Judge [#21, #22, #23]. In issuing this Order, the undersigned has also considered Plaintiff's Response [#32] and Defendant's Reply [#33]. For the reasons set forth below, the Court will **GRANT** the motion.

## I.  Procedural Background

Plaintiff Destiny Cano ("Cano") filed this action against Defendant Harlandale Independent School District ("the District") regarding severe and permanent injuries she alleges she sustained while attempting to perform an excessively dangerous stunt as a member of the dance team at Harlandale High School on January 17, 2017. Cano's Original Complaint asked the Court to review the administrative decision of the Texas Education Agency ("TEA"), which dismissed her claims under the Individuals with Disabilities Education Act ("IDEA") on statute of limitations grounds, and remand the case back to the TEA for further proceedings. Cano also asserted constitutional claims under Section 1983 of the Civil Rights Act, alleging a violation of

her right to due process, right to medical care, and right to equal protection, as well as claims under Title II of the Americans with Disabilities Act, the Rehabilitation Act of 1973, and Title IX of the Education Amendments of 1972.  The District filed a motion to dismiss for failure to state a claim, requesting dismissal of the Complaint in its entirety.  After holding an initial pretrial conference in this case, the Court ordered Cano to file an amended complaint to cure the identified deficiencies in her pleadings.  Cano timely filed an Amended Complaint as directed by the Court, which remains the live pleading in this action.

Cano's Amended Complaint reasserts all the claims in her Original Complaint and adds additional supporting factual allegations.  The District has filed a partial motion to dismiss, asking the Court to dismiss Cano's constitutional and Title IX claims.  The motion is ripe for the Court's review.

## II.  Allegations in the First Amended Complaint

According to Cano's Amended Complaint, she sustained the injuries underlying this action on January 17, 2017, during her last semester of high school.  (Am. Compl. [#26] at ¶ 15.) Cano alleges that her dance coach, Jayme Munoz, directed her to execute a stunt during practice for a performance at an upcoming basketball game that she believes was so dangerous that it should have been banned from the dance program.  (*Id.* at ¶¶ 17–24.)  Munoz allegedly directed Cano to perform the stunt without the use of a mat, despite knowing that Cano had been unable to execute the stunt successfully during previous practices and had already sustained minor injuries in attempting to do so, even with the use of a mat.  (*Id.*)  Additionally, Cano alleges that a student within the District had tried to execute the same stunt two years earlier but was unsuccessful and had sustained a concussion.  (*Id.* at ¶ 18.)

Cano states that when she fell on her head and sustained injuries, Munoz provided nothing more than ice, left her on the dance floor, and never called for help or sought emergency medical assistance. (*Id.* at ¶¶ 25–26.) Cano contends the nurse at Harlandale High School also provided her nothing more than ice, never called Emergency Medical Services, and instead called her family, who took her to urgent care, whereupon she was immediately transferred to the emergency room and placed in a cervical collar. (*Id.* at ¶¶ 27–29.) Cano was ultimately diagnosed with spinal cervical strain, concussion, neck sprain, neck pain, and post-concussion syndrome. (*Id.* at ¶ 29.) According to Cano's Amended Complaint, Cano's mother attempted to contact the School Principal after the incident for an explanation of what had happened, but the Principal failed to return her calls and had the school nurse contact her instead. (*Id.* at ¶ 31.) Cano states that she missed two weeks of school, and at the end of the two weeks was placed on "homebound status" for the remainder of the school year, after the District performed an evaluation and determined that she had a physical and mental impairment limiting her ability to concentrate and even walk. (*Id.* at ¶ 32.)

Cano contends that despite the physical and mental impairments resulting from her injury, the District did not provide her with accommodations under the IDEA and did nothing to address her changed academic and non-academic needs at school. (*Id.* at ¶ 32.) Cano alleges that District officials, including the School Superintendent, the Harlandale High School Principal, the school nurse, and Munoz, all knew that a female student had previously experienced a concussion while practicing the same stunt Cano was asked to perform and should have never permitted it to be performed again. (*Id.* at ¶ 34.) Cano accuses the District of having an unwritten practice and custom of not calling Emergency Medical Services even when it is obvious an injured student requires such assistance. (*Id.*)

Although Cano graduated from high school the spring after her injury, in June 2018, Cano filed a request for a due process hearing with the TEA pursuant to the IDEA to address the alleged failure of the District to address her academic and non-academic needs. (*Id.* at ¶ 36.)  In her request, she also included claims that she was a victim of disability discrimination in violation of the Rehabilitation Act and Americans with Disabilities Acts and alleging constitutional violations pursuant to Section 1983. (*Id.*)  The hearing officer appointed by the TEA denied all of Cano's non-IDEA claims without prejudice and  determined that Cano's IDEA claim fell outside the one-year limitations period and should have been filed before April 14, 2018, within one year of the date Cano purportedly learned the District would not provide her with the requested special education services. (*Id.* at ¶ 38.)  The hearing officer rejected Cano's arguments that the limitations period should have been tolled for various reasons. (*Id.*)

By this action, Cano claims that the hearing officer wrongly concluded that she did not satisfy her burden of proof on the applicability of the statute of limitations and argues that the IDEA portion of this case should be remanded to the TEA for further proceedings. (*Id.* at ¶ 41.) Cano's Section 1983 claims are predicated on the allegation that the District employs policies and practices that fail to keep a student like Cano safe at school and were the moving force behind her injuries; that the District failed to train its staff in health and safety practices for children; and that Cano did not receive services as a female athlete equal to her male peers. (*Id.* at ¶¶ 43–46.)  Cano's claims under the ADA and the Rehabilitation Act allege that the District refused to accommodate her disabilities as required under the Acts. (*Id.* at ¶¶ 49, 53.)  Finally, she contends that the District is liable under Title IX of the Education Amendments for engaging in gender stereotyping because it treated her differently, as a female athlete, from her male peers.

(*Id.* at ¶ 54.)  Cano seeks compensatory damages for these alleged legal injuries.  (*Id.* at ¶¶ 60–61.)

The District's partial motion to dismiss argues that Cano's Amended Complaint fails to state a claim under Title IX and for any violation of a constitutional right pursuant to Section 1983 and that these claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a

plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

## IV.  Analysis

The Court will grant the District's partial motion to dismiss and dismiss Cano's claims under Title IX and Section 1983 for the reasons that follow.

**A.    Cano fails to state a claim for a violation of Title IX.**

Title IX of the Education Amendments of 1972 provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a).   Although the "express statutory means of enforcement is administrative," Title IX is also enforceable through an implied private right of action.  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)).  If the remedy sought is damages, as here, a Title IX plaintiff must allege intentional discrimination.  *Id.* at 281 (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75–76 (1992)).

There are two types of claims under Title IX: one seeking to hold an institution liable for teacher-on-student or student-on-student sexual harassment and one challenging an institution's official policy of intentional discrimination on the basis of sex.  *See Pederson v. La. State Univ.*, 213 F.3d 858, 881–82 (5th Cir. 2000).  This case involves the latter.  In such cases, "[t]he proper test is not whether [the institution] knew of or is responsible for the actions of others, but is whether [the institution] intended to treat women differently on the basis of their sex."  *Id.* at 882.  The elements of this type of Title IX claim are analogous to those required to prove a claim under Title VII, with the exception that Title IX only allows for recovery for intentional

discrimination.  *Pacheco v. St. Mary's Univ.*, No. 15-cv-1131 (RCL), 2017 WL 2670758, at *14 (W.D. Tex. June 20, 2017) (citing opinions of Circuit Courts of Appeals that have addressed Title IX's *prima facie* case standard); *see also Mallory v. Ohio Univ.*, 76 Fed. App'x 634, 638–41 (6th Cir. 2003); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961–62 (4th Cir. 1997), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999); *Yusuf v. Vassar Coll.*, 35 F.3d 709 (2d Cir. 1994).  Accordingly, to prevail on her claim under Title IX, Cano must establish (1) that she was a member of a protected class; (2) that she suffered an unfavorable or adverse action; and (3) that the discrimination was a substantial or motivating factor for the defendant's actions.  *Pacheco*, 2017 WL 2670758, at *14.  Intentional discrimination in the context of a Title IX case, as in Title VII cases, may be proven through direct or circumstantial evidence.  *Arceneaux v. Assumption Par. Sch. Bd.*, 733 Fed. App'x 175, 178 (5th Cir. 2018).

The District's motion to dismiss argues that Cano's Amended Complaint fails to allege that anyone intentionally discriminated against Cano because of her sex.  The Court agrees.  The primary allegation related to sex discrimination in Cano's pleadings is her assertion that the male athletes at her high school had the advantage of full protective gear and equipment, whereas Cano, as a female athlete, did not enjoy such benefits.  (Am. Compl. [#26] at ¶¶ 20–22.)  The District contends that these allegations do not assert intentional gender or sex discrimination, only that students engaging in disparate sports and activities have disparate uniforms, protective gear, and equipment available to them.  The District directs the Court to several cases in support of this argument and the dismissal of Cano's Title IX claim.

In *Arceneaux v. Assumption Parish School Board*, the Fifth Circuit affirmed a grant of summary judgment to a school board in a Title IX case filed by a high school cheerleading team member alleging that her removal from the team as discipline for posing for a photograph lifting her uniform skirt was sex discrimination.  733 Fed. App'x at 179.  The Fifth Circuit concluded that she could not prove that she was excluded from the team *because* she was a female student, only that she was disciplined pursuant to the cheerleading team's policy, which did not contain any language that could be construed as applying solely to female cheerleaders.  *Id.*  Although *Arceneaux* was decided in a summary judgment posture, it still serves to illustrate the general proposition applicable here that there must some basis for inferring an intent to discriminate on the basis of sex in order to hold a federal funding recipient liable under Title IX.  Cano has not alleged that the District's provision of certain uniforms and equipment to its dance team members evinces an intent to discriminate against females.  Cano does not allege that the dance team was comprised of all females or that a male member of the dance team, if any, was provided different or additional protective gear than Cano.  Instead, she points to football as a comparison.  As there are myriad differences between football and the dance team besides the gender of the majority of each activity's participants, this is not differential treatment of similarly situated individuals.  Title IX liability does not arise based solely on the fact that different sports teams might require different treatment based on the unique training, safety, performance, and other specific factors related to each.

Even when males and females participate in the same sport or activity, it does not run afoul of Title IX if the female activity or sport and the male activity or sport are not identical in every respect.  In *Ryburn v. Giddings Independent School District*, a district court dismissed a Title IX claim filed by a male middle school student who sustained a brain injury while doing

"mat drills" at the direction of his coach during gym class.  No. 1:16-CV-879-RP, 2017 WL 3821691, at *1 (W.D. Tex. Aug. 31, 2017).  The plaintiff in *Ryburn*, like Cano here, based his Title IX claim on the school district's alleged practice of subjecting male students to inherently dangerous exercises during gym class, exercises that female students were not required to perform during their gym class, resulting in the deprivation of an educational opportunity on the basis of his sex.  *Id.* at *2.  The district court concluded that these allegations did not support an inference of impermissible discrimination under Title IX.  *Id.* at *3.  In doing so, the district court noted that Title IX only requires "equal accommodation" in athletic opportunities, not identical opportunities.  *Id. See also Pederson*, 213 F.3d at 879 (explaining that Title IX requires "equivalent treatment" and "equal accommodation" of both male and female athletes)*.*  A contrary holding—imposing liability based on differences in the particular exercises and training required of each athletic team or boys' and girls' gym classes—"would have the absurd result of allowing schools to provide different athletic offerings while forbidding appropriate exercises unless both sexes are required to engage in them."  *Ryburn*, 2017 WL 3821691, at *4.

The district court in *Ryburn* also rejected the plaintiff's theory of Title IX liability that the school district engaged in intentional gender discrimination due to its alleged indifference to the injuries of male players.  *Id.*  The court concluded that these allegations were conclusory, based only on general assertions that female students had never been injured in a gym class in the same manner as the plaintiff.  *Id.*  The court was unwilling to infer from those assertions that the school district was intentionally providing inadequate care to male students on the basis of their sex.  *Id.*  The same result is compelled here.  Cano similarly alleges that male athletes at her high school had the advantage of numerous coaches and trainers skilled in providing emergency medical and nursing interventions during practices and games, whereas the dance team did not.

9

(Am. Compl. [#26] at ¶¶ 20–21.)  Again, Cano's allegations here focus on football.  There are no specific pleadings regarding the resources provide to non-dance athletes—male and female—who participate in other sports.  Further, these allegations are conclusory.  Cano may allege that her coach's response to her specific injury was medically insufficient, but she does not allege any facts from which the Court could infer that the District intentionally provided its male athletes with coaches receiving better training in emergency interventions than those provided to female athletes like Cano.  Cano's Amended Complaint fails to allege the requisite intentional discrimination required to state a *prima facie* violation of Title IX.

**B.      Cano fails to state a claim for a violation of her constitutional rights pursuant to Section 1983.**

The District also seeks dismissal of Cano's constitutional claims asserted pursuant to Section 1983.  Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Cano's Amended Complaint alleges that the District violated her constitutional rights to due process and equal protection and that the District failed to adequately train or supervise its employees responsible for ensuring Cano's safety.  (Am. Compl. [#26] at ¶¶ 42–46.)  Cano's Amended Complaint does not allege a separate violation of a constitutional right to medical care, as did her Original Complaint.

To state a claim under 42 U.S.C. § 1983, Cano must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012).  Cano must also establish that the District was either personally involved in the deprivation or that its wrongful

actions were causally connected to the deprivation. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

Municipalities and local governmental entities qualify as persons liable to suit under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or local governmental entity, such as an independent school district like the District, may be held liable, however, only for those acts for which it is actually responsible. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Municipal liability cannot be predicated on the doctrine of *respondeat superior*. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Therefore, establishing municipal liability under Section 1983 requires proof of three elements: (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge of the policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

The District's motion advances several arguments in support of dismissal of Cano's constitutional claims. First, the District argues Cano's Amended Complaint fails to allege a constitutional injury because her allegations do not show that her injury was caused by state action, as her allegations demonstrate that she was injured by her own and her teammates' actions, not those of a state actor. The District also argues that Cano has failed to state a claim for a violation of due process, equal protection, or a failure to train. Finally, the District contends that even if Cano could state any such claim, she has failed to sufficiently allege a

policy or custom sufficient to give rise to municipal liability.  Cano's constitutional claims fail as a matter of law.

       i.     <u>Substantive Due Process</u>

Cano's due process claim argues that she has a constitutional right to her bodily integrity while at school and that the District's policies and procedures failed to keep her safe and were the moving force behind her injuries.  The Fifth Circuit has recognized a claim under the substantive component of the Due Process Clause when a plaintiff alleges that a state actor had a duty to provide students with protection from injury occurring on school property and failed to do so.  *See Priester v. Lowndes County*, 354 F.3d 414, 420–21 (5th Cir. 2004) (construing claim against school district related to injury plaintiff suffered at the hands of another student during football practice as arising under substantive component of Due Process Clause); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 526 (5th Cir. 1994) (construing parents' claim related to death of son by random gunfire in parking lot of public high school after school dance as arising under substantive component of Due Process Clause).  As a general rule, however, the state's failure to protect an individual from private violence or injury caused by a private actor does not violate the Due Process Clause.  *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989).

There are certain limited circumstances, however, in which there arises a duty to protect an individual from harm.  *Priester*, 354 F.3d at 421.  An exception to the general rule arises, for example, when there is a "special relationship" between students and teachers or coaches, due to the fact that the student is "involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power."  *Id.* (quoting *McKinney v. Irving Ind. Sch. Dist.*, 309 F.3d 308, 313 (5th Cir. 2002)).  There is also an

exception created by what is referred to as "the state-created danger exception," under which a state actor knowingly places a citizen in danger and therefore may be accountable for the foreseeable injuries that result. *Id.* at 422 (citing *McKinney*, 309 F.3d at 313).

Cano's response to the District's motion to dismiss does not address the District's argument that her injuries were not caused by state action because there was no "special relationship" at issue. Nor does Cano advance another basis for departing from the general rule that a state actor's failure to protect an individual from injury caused by a private actor does not violate the Due Process Clause. The Court will nonetheless briefly address the exceptions identified in the case law.

With respect to the special relationship exception, in *Priester*, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of a defendant school district, finding that no special relationship existed between a school district and its students during football practice, a school sponsored activity "held outside the time during which students are required to attend school for non-voluntary activities." *Id.* (quoting *Lefall*, 28 F.3d at 529). Although students may be compelled to attend school during the day, "any special relationship that may have existed lapsed when compulsory attendance ended." *Lefall*, 28 F.3d at 530. Therefore, the district court did not err in finding no requisite state action when the plaintiff athlete was injured during football practice, a voluntary extra-curricular activity held outside of the time during which students are required to attend school. *Priester*, 354 F.3d at 422. The plaintiff's substantive due process claim based on a lack of supervision during practice failed as a matter of law. *Id.*

Although Cano's claim here is not premised on an assault or intentional act of violence by another student like the injuries underlying *Priester* or *Lefall*, her theory of Section 1983

liability is the same—a failure of the District to protect her from injury sustained on school property.  Similar to the injuries in *Priester* and *Lefall*, Cano's injuries occurred during a dance team practice, an extracurricular activity in which she was not required or mandated by law to participate.  Cano's pleadings therefore do not sufficiently allege the special relationship required to give rise to potential liability under the substantive component of the Due Process Clause.[1]

Cano's Amended Complaint could be, however, construed to plead the state-created danger exception.  The state-created danger exception requires proof of the following elements: (1) the state actor created or increased the danger to the plaintiff; and (2) the state actors acted with deliberate indifference.  *Id.* at 422.  Courts applying the "state-created danger" exception "have generally required plaintiffs to demonstrate (or, at the motion-to-dismiss stage, to allege) that the defendant state official *at a minimum* acted with deliberate indifference toward the plaintiff."  *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002) (emphasis in original).  Although Cano does not reference or argue the state-created danger exception in either her Amended Complaint or her response to the District's motion to dismiss, she does allege (and argue in her response) that Coach Munoz was deliberately indifferent to the risks caused by requiring Cano to perform a dangerous stunt known as "the Trick" without a mat.  "To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety."  *Id.* at 326 n.8 (internal quotation and citation omitted).  "The state actor's

---

[1] Cano's pleadings allege that the dance practice occurred at 9:00 a.m. on January 17, 2017, which was a Tuesday.  (Am. Compl. [#26] at ¶ 24.)  The pleadings do not indicate whether this practice was held during the regular school day.  If Cano could ultimately demonstrate that the dance practice occurred as part of a class period during the school day when her attendance was compulsory, she might be able to argue for the existence of a "special relationship" between the parties.  But Cano makes no such argument here in response to Defendant's motion to dismiss, and, regardless, her substantive due process claim still fails as a matter of law under the requirements set forth in *Monell* for the imposition of municipal liability, detailed *infra*.

actual knowledge is critical to the inquiry.  A state actor's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference." *Id.* (internal quotation and citation omitted).

Cano's factual allegations could be construed as alleging deliberate indifference on the part of Coach Munoz, as her pleadings assert that Munoz knew that Cano had been unable to successfully complete the stunt and had already sustained minor injuries in attempting to do so, even with the use of a mat, and another student in a previous year had suffered a head injury from a failed attempt at the move.  Nonetheless, Cano's substantive due process claim still fails as a matter of law, even if she has sufficiently pleaded state action via the state-created danger (or any other) exception, because she has failed to allege the District's liability for such indifference either under a failure to train theory or a policy and custom of the District.

School districts can be liable for the deliberate indifference of their subordinates, where there is (1) a failure to supervise or train; (2) a causal connection between the failure to supervise or train and the violation of the plaintiff's rights; and (3) where the failure to supervise or train itself amounted to deliberate indifference.  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–53 (5th Cir. 1994).  Mere negligence or even gross negligence is not enough; a plaintiff must demonstrate a pattern of constitutional violations, such that a school district had "actual or constructive notice of ongoing constitutional violations at the school."  *Yara v. Perryton Indep. Sch. Dist.*, 560 Fed. App'x 356, 360 (5th Cir. 2014).  Cano does not allege such a pattern or practice of ongoing injuries occurring during athletic practices or events within the school district or during dance team practice under the supervision of Coach Munoz.  Cano's allegation that on one isolated occasion another student was previously injured while attempting to perform "the Trick" does not rise to the level of the type of ongoing constitutional violation that could

evidence deliberate indifference on the part of the school district.  *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding eleven incidents of possible Fourth Amendment violations in police force could not support allegations of pattern of illegality).

Nor do these allegations suffice to allege a policy for *Monell* liability based on some other theory of constitutional violation, such as the alleged failure to contact Emergency Medical Services when there is an injury of a student on school property.  (Am. Compl. [#26] at ¶ 34.) An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (internal quotations and citations omitted).  Cano's pleadings contain nothing more than a conclusory allegation that the District had an unwritten practice to not call for Emergency Medical Services, even when an injured student clearly needed medical intervention.  Her Amended Complaint only pleads facts regarding the failure of Coach Munoz and the nurse to provide her with appropriate medical care in her case.  These allegations are insufficient to impose municipal liability on the District for the acts of its employees based on a failure to train or based on its liability as a municipality under *Monell*.

ii.   Equal Protection

Cano's claim that the District violated the Equal Protection Clause also fails as a matter of law.  This claim is based on the same theory as Cano's flawed Title IX claim—that she did not receive the same services as her male athletic peers, such as protective equipment and access to

coaches with training in medical interventions.  To state a claim of sex discrimination under the Equal Protection Clause and Section 1983, Cano must allege that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."  *Priester*, 354 F.3d at 424 (internal quotation and citation omitted).  A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group."  *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (emphasis in original).

As discussed in the context of Cano's Title IX claim, her Amended Complaint is devoid of any allegations that could give rise to a plausible inference of intentional discrimination on the basis of her sex.  Nor has Cano identified any similarly situated individuals for purposes of this claim, only that other athletes are subject to sports-based, as opposed to sex-based, distinctions. This claim fails as a matter of law and should be dismissed.

**C.**     **The Court declines to give Cano another opportunity to replead her flawed claims.**

Cano's response to the District's motion to dismiss requests a second opportunity to replead her allegations.  The Court already allowed Cano one chance to cure the pleading defects identified by the District, which included a challenge to the sufficiency of her Original Complaint as to her Title IX and constitutional claims.  (Mtn. to Dismiss [#5] at ¶ 15.)  The Court declines to allow Cano yet another chance to properly present her Title IX and constitutional claims to the Court.

**IT IS THEREFORE ORDERED** that Defendant Harlandale Independent School District's Rule 12(b)(6) Motion to Dismiss in Part Cano's First Amended Complaint [#30] is

**GRANTED**.  Cano's Title IX and constitutional claims asserted pursuant to Section 1983 are

**DISMISSED**.

SIGNED this 16th day of December, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE